UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:

                                    Case No. 8-14-73406-reg

Jose Manuel Gonzalez a/k/a/ Jose M. Gonzalez
a/k/a Jose Gonzalez and Maria Elena Diaz
a/k/a Maria E. Diaz a/k/a Maria Diaz

                            Debtors.              Chapter 7
-------------------------------------------------------------------x

Marc A. Pergament, Chapter 7 Trustee of the
Estate of Jose Manuel Gonzalez a/k/a/
Jose M. Gonzalez a/k/a Jose Gonzalez
and Maria Elena Diaz a/k/a Maria E. Diaz
 a/k/a Maria Diaz

                          Plaintiff,

                                  Adv. Proc. No. 8-15-08038-reg

     v.

Jose Manuel Gonzalez a/k/a/ Jose M. Gonzalez
a/k/a Jose Gonzalez and Maria Elena Diaz
a/k/a Maria E. Diaz a/k/a Maria Diaz

                          Defendants.
-------------------------------------------------------------------x

### *DECISION AFTER TRIAL*

       This matter is before the Court pursuant to an adversary proceeding commenced by Marc

A. Pergament, Chapter 7 Trustee of the Estate of Jose Manuel Gonzalez and Maria Elena Diaz (the

"Plaintiff") against joint debtors Jose Manuel Gonzalez ("Gonzalez") and Maria Elena Diaz

("Diaz") (collectively the "Defendants") under 11 U.S.C. §§ 727(a)(4)(A) and 707(b)(3).  The

Plaintiff seeks to bar the Debtors' discharge based on numerous false statements contained in the

Debtors' schedules and Statement of Financial Affairs ("SOFA"). The Debtors did attempt to

correct some, but not all of these false statements after the Plaintiff filed this complaint.  In the

alternative, the Plaintiff seeks to have the Debtors' petition dismissed as a bad faith filing.  The

Defendants were represented by counsel in the main bankruptcy case but appeared *pro se* in this adversary proceeding. While the Defendants acknowledge the falsity of the statements identified by the Plaintiff, Gonzalez, who filed an answer and testified at trial, claims that he lacked the requisite intent to defraud as evidenced by his amendments to the SOFA and his cooperation with the Plaintiff in the bankruptcy case. Gonzalez also claims that he relied on advice of counsel as to one of the specific entries regarding whether to disclose his sale of stock, that his counsel reviewed the information in the schedules and SOFA, and his counsel did not ask him to correct anything with respect to the initial filing. Diaz filed an answer as well but did not testify at trial. However, Diaz also signed the amendments to the SOFA and appears to have cooperated with the Plaintiff. Gonzalez, who works in the financial services industry and holds a master's in business administration, cannot rely on his amendments to the SOFA, after the false statements were discovered, to establish his innocence. There are too many false statements concerning both income and expenses to conclude that he acted innocently, and the false statements regarding expenses have yet to be corrected. In addition, Gonzalez cannot use an advice of counsel defense with respect to information included in the SOFA and schedules that was patently false. Diaz raised no defense at trial because she failed to appear, and the Court concludes that the Plaintiff established his burden of proof as to her as well.

This case requires the Court to balance the most basic goal of the bankruptcy statutes, which is to provide an honest debtor with a fresh start, with the obligation of a debtor seeking a fresh start to strictly comply with the requirements set forth in the statutes. Receiving a discharge in bankruptcy is a privilege and not a right. Debtors have a responsibility to make certain the information they provide is accurate. They have a responsibility to respond truthfully and in a timely fashion to requests of the trustee or the Court. They also are responsible for the accuracy

and truthfulness of all documents they sign and file under penalty of perjury.  This does not mean that a debtor who makes an honest error is not given the right to amend that error.  However, when the documents exhibit a pattern of errors and the debtor does not correct those errors until they are uncovered by the trustee, then that debtor runs the risk of forfeiting his or her right to a discharge. While the vast majority of people seeking the protection of the bankruptcy statutes do so without facing a challenge, that possibility is always present and where it is proven that a debtor has failed to comply with the law, the consequences are severe.  For the reasons set forth more fully below, the Defendants' discharge is denied pursuant to 11 U.S.C. § 727(a)(4)(A), and the alternative request for relief is dismissed.

### PROCEDURAL HISTORY

On July 27, 2014 (the "Petition Date"), the Defendants filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code (the "Petition").  On March 2, 2015, the Plaintiff commenced this adversary proceeding against the Defendants by filing a complaint (the "Complaint").  On April  20, 2015, the Defendants filed an answer to the Complaint (the "Answer"). On February 16, 2016, the parties filed a  joint pre-trial memorandum (the "Joint Pre-Trial Memorandum"). On February 23, 2016, a trial was held, at which Gonzalez appeared *pro se* and testified, Diaz, also *pro se*, failed to appear, and Exhibits 1 through 8 were each admitted without objection (the "Trial").  At the closing of the Trial this matter was deemed submitted.

### FACTS

The Joint Pre-Trial Memorandum sets forth certain agreed facts.  Additional facts were developed from trial testimony and exhibits.  On July 27, 2014 (the "Petition Date"), the Defendants filed the Petition.  Attached to the Petition were various required schedules (the

"Schedules") and statements, including the SOFA. The SOFA indicated that Gonzalez had income from his prior employment of: $161,796 in 2012, $102,190 in 2013, and $56,678.76 in 2014 through the Petition Date. The SOFA further indicated that the Defendants had no income other than from employment or operation of a business and that Diaz had no income from 2012 to the Petition Date. Defendants' Schedule J ("Schedule J") indicates that the Defendants had monthly expenses of: $3,689.22 for mortgage payments; $0 for home maintenance, repair, and upkeep; $800 for additional mortgage payments[1]; $400 for electricity, heat, and natural gas; $20 for water, sewage, and garbage; $300 for telephone, cell phone, internet, satellite, and cable services; $900 for food and housekeeping supplies; $50 childcare and children's education; $25 for clothing, laundry, and dry cleaning; $50 for personal care products and services; $50 for medical and dental; $400 for transportation, including gas and maintenance; $50 for entertainment; $180 for vehicle insurance, and; $611.47 for car payments.[2]    Schedule J reflects total monthly expenses of $7,500.69.

After appearing at the § 341 hearing before the Trustee, on November 5, 2014, the Defendants provided the Plaintiff with a spreadsheet detailing their monthly expenses from March, 2013 to August, 2014 (the "Spreadsheet"). Exhibit 8. Gonzalez testified that he categorized all of the Defendants' expenses reflected in the Defendants' bank statements from their jointly-held account. Trial Tr. pg 18 (Feb. 23, 2016) ("Trial Tr."). The expenses detailed in the Spreadsheet include average monthly expenses[3] of: $1,208.54 for mortgage payments;[4] $423.97 for home maintenance, repair, and upkeep;[5] $0 for additional mortgage payments; $409.24 for electricity,

---

[1] Gonzalez testified that the $800 monthly additional mortgage payments were what "[he] was trying to pay" on his home equity line of credit. Trial Tr. pg 15 (Feb. 23, 2016)
[2] The Defendants also indicated $0 expenses for various entries not discussed above.
[3] Average monthly expenses are based on the figures provided by the Defendants for March 2013 through July 2014.
[4] Included in this figure are the expenses that the Defendants categorized as "Mortgage Payment."
[5] Included in this figure are the expenses that the Defendants categorized as "Home Repair."

heat and natural gas;[6] $13.19 for water, sewage, and garbage;[7] $727.76 for telephone, cell phone, internet, satellite, and cable services;[8] $2,705.41 for food and housekeeping supplies;[9] $97.71 for childcare and children's education;[10] $1,380.01 clothing, laundry, and dry cleaning;[11] $192.92 for personal care products and services;[12] $381.93 for medical and dental;[13] $1,038.90 for transportation expenses, including gas and maintenance;[14] $556.54 entertainment;[15] $178.12 for vehicle insurance,[16] and; $561.74 for car payments.[17]  The Spreadsheet reflects average total monthly expenses of $10,841.99, which sharply contrasts with the figures provided by the Defendants in the Schedules.

On March 2, 2015, the Plaintiff commenced this adversary proceeding by filing the Complaint, alleging, *inter alia*: that the Defendants should not receive a discharge because they failed to include in the SOFA $47,236.51 of cash deposits into the Defendants' joint checking account (the "Account") and $48,950 withdrawn in 2012 from Gonzalez's E-Trade IRA Account (the "IRA"); because the Defendants improperly included in Schedule J $3,689.22 in monthly mortgage payments as expenses despite not making any payments on account of the mortgage since July, 2013, and; because the Defendants understated their actual monthly expenses of $10,320 in Schedule J, which reflected only $7,500.36.

---

[6] Included in this figure are the expenses that the Defendants categorized as "Electric Bill" and "Natural Gas Bill."
[7] Included in this figure are the expenses that the Defendants categorized as "Water Bill."
[8] Included in this figure are the expenses that the Defendants categorized as "Phone Bill."
[9] Included in this figure are the expenses that the Defendants categorized as ""Grocery," "Restaurant," and "Food."
[10] Included in this figure are the expenses that the Defendants categorized as "School Supplies."
[11] Included in this figure are the expenses that the Defendants categorized as "Clothing."
[12] Included in this figure are the expenses that the Defendants categorized as "Gym."
[13] Included in this figure are the expenses that the Defendants categorized as "Medical."
[14] Included in this figure are the expenses that the Defendants categorized as "Gas," "Transportation," and "Car Repair."
[15] Included in this figure are the expenses that the Defendants categorized as "Entertainment" and "Sports League (Kids)."
[16] Included in this figure are the expenses that the Defendants categorized as "Car Insurance Bill."
[17] Included in this figure are the expenses that the Defendants categorized as "Auto Finance."

On March 26, 2015, the Defendants filed an amended SOFA (the "Amended SOFA").  The Amended SOFA indicates that the Defendants had income other than from employment of: $72,449.40 in 2012 from the liquidation of a Roth IRA account; $20,295.96 in 2012 from the sale of stocks; $17,820 and $2,430 in 2012 and 2013, respectively, from unemployment compensation for Gonzalez.  Additionally, the Amended SOFA reflects that Gonzalez had income from employment of: $125,766 in 2012; $99,171 in 2013; and $56,676.87 in 2014 as of the Petition Date.

At the Trial, Gonzalez testified that he obtained a bachelor's degree and a master's degree, each in business administration.  Trial Tr. at 6.  Gonzalez worked in finance, in the field of hedge fund operations, since receiving his degrees.  *Id.*, at 6-7.  Gonzalez worked as an operations manager for a hedge fund, earning annually $150,000 plus a bonus of between $80,000 and $100,000 until he was laid off in February, 2012. *Id.*, at 21-22.  At that time, Gonzalez received $111,826.91 in severance pay. *Id.*, at 22-23; Exhibit 5.  Gonzalez collected unemployment benefits for approximately 1 year until he obtained new employment in February, 2013 (the "Unemployment Compensation").  Trial Tr. at 24.  Gonzalez's new position was with a hedge fund and involved reconciling cash positions. *Id.*, at 7.

Gonzalez also testified at the trial that he owned the IRA account in 2012.  *Id.* at 24.  Gonzalez made $78,950 in withdrawals from the IRA between May 31, 2012 and December 6, 2012 (the "IRA withdrawals").  Gonzalez further testified that between 2012 and 2014, the Defendants were the joint owners of a TD Bank account (the "TD Bank Account") and held no other account.  Trial. Tr. at 30-31.  Between March 11, 2013 and the Petition Date, the Defendants received at least $44,849.90 from friends and family that was deposited in the TD Bank Account (the "Family Gifts"). Trial Tr. at 24, 28; Exhibit 6; Joint Pretrial Memorandum at 4-5.

Gonzalez's proffered reason for the many inaccuracies in the original Petition was that "ballpark figures" were used to determine expenses, and the original schedules were not based on the Debtors' bank account statements.  Trial Tr. at 18.  Gonzalez further testified that the Debtors have been cooperative with the Trustee and that they never intended to commit fraud or abuse the bankruptcy system.  Trial Tr. at 42.

## DISCUSSION

Section 727 governs an individual chapter 7 debtor's discharge.  The provisions of § 727 are construed strictly against the objecting party and liberally in favor of the debtor.  *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir. 1996).  The objecting party must prove the elements of § 727 by a preponderance of evidence.  *In re Colish*, 289 B.R. 523, 536 (Bankr. E.D.N.Y. 2002).

## 11 U.S.C. § 727(a)(4)(A)

Section 727(a)(4)(A) provides: a discharge will not be granted if "the debtor knowingly and fraudulently, or in connection with the case ... made a false oath or account." 11 U.S.C. § 727(a)(4)(A). A party objecting to a debtor's discharge pursuant to § 727(a)(4)(A), must prove: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *Carlucci & Legum v. Murray (In re Murray),* 249 B.R. 223, 228 (E.D.N.Y. 2000).  The Plaintiff bears the burden of establishing each element of § 727(a)(4)(A) by a preponderance of the evidence. *Id.* at 228.

A bankruptcy petition, schedules and related statements are declarations made under penalty of perjury and "constitute a statement under oath for purposes of § 727(a)(4)(A)." *Nof v.*

*Gannon (In re Gannon),* 173 B.R. 313, 320 (Bankr. S.D.N.Y. 1994). "Omissions as well as affirmative misstatements qualify as false statements for Section 727(a)(4)(A) purposes." *Adler v. Lisa Ng and Charming Trading Company (In re Adler),* 395 B.R. 827, 841 (E.D.N.Y. 2008). Even "one single false oath or account is sufficient to deny a debtor's discharge." *TD Bank, N.A. v. Nazzaro (In re Nazzaro),* No. 10–74869, 2013 WL 145627, at *7 (Bankr. E.D.N.Y. Jan. 13, 2013). A debtor's act of amending his schedules and related documents can be used to establish that the statements in the original petition were false, but such amendment does not by itself establish the debtor's knowledge or fraudulent intent. *See In re Moreo*, No. 07-71258-DTE, 2008 WL 5110967, at *4 (Bankr. E.D.N.Y. Dec. 2, 2008). "A debtor's disclosure of information previously omitted from schedules is some evidence of innocent intent, but this inference is 'slight where the debtor has ... amended his schedules after the trustee or creditors have already discovered what the debtor sought to hide.'" *In re Maletta*, 159 B.R. 108, 112 (Bankr. D. Conn. 1993) (citing *Matter of Kilson*, 83 B.R. 198, 203 (Bankr. D. Conn. 1988)).

In determining a debtor's knowledge of the falsehood of a statement "[c]ourts may consider the debtor's education, business experience, and reliance on counsel … but the debtor is not exonerated by pleading that he or she relied on patently improper advice of counsel." *Bub v. Rockstone Capital, LLC*, 516 B.R. 685, 695 (E.D.N.Y. 2014). "A statement is considered to have been made with knowledge of its falsity if it was known by the debtor to be false, made without belief in its truth, or made with reckless disregard for the truth." *Maletta*, 159 B.R. at 112 (internal citations omitted). "In examining whether debtors exhibited a reckless disregard or indifference to the truth, courts consider (a) the serious nature of the information sought and the necessary attention to detail and accuracy in answering; (b) a debtor's lack of financial sophistication as evidenced by his or her professional background; and (c) whether a debtor repeatedly blamed

recurrent errors on carelessness or failed to take advantage of an opportunity to clarify or correct inconsistencies." *Gobindram v. Bank of India*, 538 B.R. 629, 638 (E.D.N.Y. 2015) (internal citations omitted).  Similarly, a court may find that a debtor acted with reckless indifference to the truth, and may infer fraudulent intent, "from a series of incorrect statements and decisions contained in the schedules." *Bub*, 516 B.R. at 694 (citing *In re Dubrowsky*, 244 B.R. 560, 571-72 (E.D.N.Y. 2000).  "Once a plaintiff produces evidence of a false statement, the burden shifts to the debtor to produce a credible explanation," absent which, "a court may infer fraudulent intent." *In re Virovlyanskiy*, 485 B.R. 268, 272 (Bankr. E.D.N.Y. 2013).

A false oath is material if it "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Agai v. Antoniou (In re Antoniou),* 515 B.R. 9, 22 (Bankr. E.D.N.Y. 2014) (internal citation omitted). "[M]ateriality does not require a showing that the creditors were prejudiced by the false statement." *In re Robinson,* 506 F.2d 1184, 1188 (2d Cir. 1974).

In this case, the Petition contained multiple material false oaths.  The Petition was signed under penalty of perjury and is a statement made under oath.  *See Gannon*, 173 B.R. at 320.  The Petition contained numerous material and demonstrably false statements and omissions, including: failing to report income from the sale of stocks, the IRA Withdrawals, the Unemployment Compensation, and the Family Gifts on the SOFA; misstating Gonzalez's employment income on the SOFA; grossly overstating mortgage payments and additional mortgage payments on Schedule J; and grossly understating expenses (home maintenance, repair, and upkeep, telephone, cell phone, internet, satellite, and cable services, food and housekeeping supplies, clothing and laundry, personal care products, medical and dental, transportation, including gas and maintenance, and

entertainment).    These false statements are all material, in that they relate directly to the Defendants' finances and disposition of their property.  *See Antoniou*, 515 B.R. at 22.

Based on the record before the Court, the Plaintiff has established that the Defendants knew the statements were false as the Plaintiff has established that the Defendants made the statements with reckless disregard for the truth.  Gonzalez testified that he consulted no records whatsoever in preparing the Petition, that "[he] used ballpark figures" and affirmed that "[he] pulled them from [his] mind[.]" Trial Tr. at 21.  Gonzalez was a sophisticated debtor with years of experience in finance.  The total failure of Gonzalez to verify such fundamental statements as his income and expenses constitutes reckless indifference to the truth.  *See Gobindram*, 538 B.R. at 638.  While Diaz failed to appear at the Trial and, thus, there is no testimony as to her knowledge of the false statements, Diaz signed the Petition and, notwithstanding the numerous false statements, affirmed the accuracy of the information contained therein.  Either Diaz failed to review and verify the accuracy of information contained in the Petition or she was aware of the false statements and signed the Petition nonetheless.  Thus, the Court can infer that Diaz acted with reckless indifference to the truth, if not actual knowledge of falsehood.

The Plaintiff, having established that the Defendants made false statements, created a rebuttable inference of fraudulent intent. *See Virovlyanskiy*, 485 B.R. at 272.  The Defendants failed to provide a credible explanation as to why the Petition contained the false statements. Gonzalez merely explained that "the original forms weren't filled out as accurately as they should have been but … [the Defendants] have been extremely cooperative and transparent …" and that "[the Defendants] never intended to commit fraud …." Trial Tr. at 42.  Gonzalez also stated that he thought the Petition only had to "include money made from working[,]" to explain why he failed to include the Family Gifts, the IRA Withdrawals and the Unemployment Compensation on

the SOFA. *Id.*, at 29. Gonzalez also testified that he omitted the income from the sale of stocks on his original SOFA because he was confused by the wording of the questions—section 11 of the SOFA asks for all financial instruments transferred by the debtors within one year pre-petition and section 2 of the SOFA asks for all non-employment income of the debtors within two years pre-petition. Gonzalez explained that he thought that since the stocks sold were beyond the time frame of section 11 of the SOFA he did not need to include the income from the sale in section 2. *Id.*, at 29. Gonzalez further testified that the Defendants reviewed the Petition, generally, and this issue specifically, with their bankruptcy counsel, who confirmed to Gonzalez that he did not need to include the income derived from the sale of stocks. However, the Defendants' false statements are not excused by their reliance on the improper advice of counsel. *See Bub*, 516 B.R. at 695. Even Gonzalez's claim that he corrected the mistakes is not entirely correct. The Debtors only submitted the Amended SOFA and never corrected Schedule J. Diaz failed to provide any credible explanation of the false statements, as Diaz failed to appear at the Trial. Accordingly, the Court finds that the Plaintiffs have established that the Defendants made the aforementioned material false oaths with fraudulent intent, and the Defendants failed to rebut this finding with any credible evidence.

## *CONCLUSION*

For the foregoing reasons, the Court finds the Plaintiff has satisfied his burden of showing, by a preponderance of the evidence, that the Defendants are not entitled to a discharge pursuant to 11 U.S.C. §§ 727(a)(4)(A) and, accordingly, grants judgment in favor of the Plaintiff on the first cause of action.  Because the Defendants' discharge is denied, the alternative request to dismiss the Debtors' case need not be considered.  The Court shall enter judgment consistent with this Memorandum Decision forthwith.



**Dated: Central Islip, New York**
      **June 23, 2016**

        **Robert E. Grossman**
    **United States Bankruptcy Judge**